United States Bankruptcy Court
Northern District of California

In re:  Case No. 17-52022 MEH

JEFFERY LAYNE WYATT

Chapter 11

_____/

**SIXTH AMENDED COMBINED PLAN OF REORGANIZATION
AND DISCLOSURE STATEMENT
(August 21, 2019)**

**INTRODUCTION**

This is Debtor's Sixth Amended Combined Chapter 11 Plan of Reorganization and Disclosure Statement (the Plan). The Plan identifies each known creditor by name and describes how each claim will be treated if the Plan is confirmed.

Part 1 contains the treatment of creditors with secured claims; Part 2 contains the treatment of general unsecured creditors: a prorata portion of **$15,000,** likely to result in an **11%** recovery of allowed claims in monthly payments over **24** months. Taxes and other priority claims would be paid in full, as shown in Part 3.

Most creditors (those in impaired classes) are entitled to vote on confirmation of the Plan. Completed ballots must be received by Debtor's counsel, and objections to confirmation must be filed and served, no later than **October 10, 2019.** The court will hold a hearing on confirmation of the Plan on **October 17, 2019** at **10:30 a.m..**

Attached to the Plan are exhibits containing financial information that may help you decide how to vote and whether to object to confirmation. Exhibit 1 includes background information regarding Debtor and the events that led to the filing of the bankruptcy petition and describes significant events that have occurred during this Chapter 11 case. Exhibit 2 contains an analysis of how much creditors would likely receive in a Chapter 7 liquidation. Exhibit 3 shows Debtor's monthly income and expenses. Exhibit 4 describes how much Debtor is required to pay on the effective date of the plan.

Exhibit 5 shows Debtor's monthly income and expenses related to each investment property.

Whether the Plan is confirmed is subject to complex legal rules that cannot be fully described here. You are strongly encouraged to read the Plan carefully and to consult an attorney to help you determine how to vote and whether to object to confirmation of the Plan.

If the Plan is confirmed, the payments promised in the Plan constitute new contractual obligations that replace the Debtor's pre-confirmation debts. Creditors may not seize their collateral or enforce their pre-confirmation debts so long as Debtor performs all obligations under the Plan. If Debtor defaults in performing Plan obligations, any creditor can file a motion to have the case dismissed or converted to a Chapter 7 liquidation, or enforce their non-bankruptcy rights. Debtor will be discharged from all pre-confirmation debts (with certain exceptions) if Debtor makes all Plan payments. Enforcement of the Plan, discharge of the Debtor, and creditors' remedies if Debtor defaults are described in detail in Parts 5 and 6 of the Plan.

**PART 1: TREATMENT OF SECURED CREDITORS**

**Debtor to Make Regular Payments and Pay Arrears Over Time**.

| Class | Name of Creditor | Collateral | Regular Monthly Payment | Estimated Arrears | Interest Rate on Arrears | Monthly Payment on Arrears |
|---|---|---|---|---|---|---|
| 1A | Wilmington Savings Fund Society, FSB, as trustee for Upland Mortgage Loan Trust B | 2194 White Sands Drive, South Lake Tahoe, CA 96150 | $5,186.04 (Paid by 3616 Associates, LLC) | $50,000* | 0% | $833.33 |

The entity that owns the property at 2194 White Sands Drive (3616 Associates, LLC) will pay the entire amount contractually due by making all post-confirmation regular monthly payments, and by paying all pre-confirmation arrears (including attorneys fees and late charges) with interest in **60** equal monthly

Individual Chapter 11
Combined Plan & Disclosure Statement (Version: 7/30/12)
July 30, 2012
-2-

payments, due the **1st** day of the month, starting **November 1, 2019,** on the above secured claims. To the extent arrears are determined to be other than as shown above, appropriate adjustments will be made in the number of payments. Creditors in these classes shall retain their interest in the collateral until paid in full.

* On December 18, 2018, Debtor and Wilmington Savings Fund Society, FSB, as trustee for Upland Mortgage Loan Trust B ("Wilmington") entered into a Stipulation re: Treatment of Creditor's Claim under Debtor's Proposed Chapter 11 Plan of Reorganization and Resolving Motion for Relief from the Automatic Stay (the "Stipulation"). On December 20, 2018, the Court entered an order approving the Stipulation between Debtor and Wilmington. Debtor incorporates the terms of the Stipulation into the Plan.

Creditors in these classes may not repossess or dispose of their collateral so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **These secured claims are impaired and entitled to vote on confirmation of the Plan.**

**Property to be Sold.**

On April 18, 2019, Debtor filed three (3) separate Motion to Sell Free and Clear relating to the real properties located at 14598 Big Basin Way, Units A-C, Saratoga, California 95070. On May 28, 2019, the Court approved Debtor's motions to sell. The properties have since been sold, with secured creditors being paid to the extent that funds were available to pay off secured creditors.

**PART 2: TREATMENT OF GENERAL UNSECURED CREDITORS**

**Class 2 General Unsecured Claims.**

| Name of Creditor | Amount of Claim | Disputed Y/N | Amount to be Paid | [Monthly] [Quarterly] Payment |
|---|---|---|---|---|
| Internal Revenue Service | $36,806.34 | N | $36,806.34 | $274.16 |
| Franchise Tax Board | $7,812.79 | N | $7,812.79 | $130.21 |
| Garrett Rajkovich | $60,000.00 | N | $60,000.00 | $1,000.00 |
| Garrett Wyatt | $35,000.00 | N | $35,000.00 | $583.33 |

Allowed claims of general unsecured creditors (including allowed claims of creditors whose executory contracts or unexpired leases are being rejected under this Plan) shall be paid as follows:

**Pot Plan.** Creditors will receive a pro-rata share of a fund totaling **$15,000.00**, created by Debtor's payment of **$625.00** per month for a period of **24** months, starting **November 2019**. Pro-rata means the entire amount of the fund divided by the entire amount owed to creditors with allowed claims in this class.

Creditors in this class may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **This class is impaired and is entitled to vote on confirmation of the Plan.** Debtor has indicated above whether a particular claim is disputed.

**PART 3: TREATMENT OF PRIORITY AND ADMINISTRATIVE CLAIMS**
(a)  <u>Professional Fees</u>.

Debtor will pay the following professional fees in full on the Effective Date, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount |
|---|---|
| NONE | |

The following professionals have agreed to accept payment over time as follows. Payments will be made monthly, due on the 1st day of the month, starting November 1, 2019, or upon approval by the court, whichever is later.

| Name and Role of Professional | Estimated Amount | Payment Amount | Number of Payments |
|---|---|---|---|
| David S. Henshaw (Henshaw Law Office), Attorney for Debtor | $40,000 | $1,111.11 | 36 |

Professionals may not take collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Estate professionals are not entitled to vote on confirmation of the Plan.**

(b)  <u>Other Administrative Claims</u>.  Debtor will pay other allowed claims entitled to priority under section 503(b) in full on the Effective Date; except expenses incurred in the ordinary course
Individual Chapter 11
Combined Plan & Disclosure Statement     (Version: 7/30/12)
July 30, 2012
-4-
Case: 17-52022   Doc# 163   Filed: 09/04/19   Entered: 09/04/19 14:44:27   Page 4 of 17

of Debtor's business or financial affairs, which shall be paid when normally due and payable (these creditors are not listed below). All fees payable to the United States Trustee as of confirmation will be paid on the Effective Date; post-confirmation fees to the United States Trustee will be paid when due.

Administrative Creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Administrative claimants are not entitled to vote on confirmation of the Plan.**

| Name of Administrative Creditor | Estimated Amount of Claim |
|---|---|
| NONE | |

(c) <u>Tax Claims</u>. Debtor will pay allowed claims entitled to priority under section 507(a)(8) in full over time with interest (at the non-bankruptcy statutory interest rate) in equal amortizing payments in accordance with section 511 of the Bankruptcy Code. Payments will be made monthly, due on the **1st** day of the month, starting **November 2019**. To the extent amounts owed are determined to be other than as shown below, appropriate adjustments will be made in the number of payments.

Priority tax creditors may not take any collection action against Debtor so long as Debtor is not in material default under the Plan (defined in Part 6(c)). **Priority tax claimants are not entitled to vote on confirmation of the Plan.**

| Name of Creditor | Estimated Amount of Claim | Statutory Interest Rate | Payment Amount | Number of Payments |
|---|---|---|---|---|
| Franchise Tax Board | $18,995.11 | 4% | $512.97 | 36 |
| Internal Revenue Service | $112,695.55 | 4% | $3,445.37 | 36 |

**PART 4: EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

(a) <u>Executory Contracts/Unexpired Leases Assumed</u>. Debtor assumes the following executory contracts and/or unexpired leases upon confirmation of this Plan and will perform all pre-confirmation and post-confirmation obligations thereunder. Post-confirmation obligations will be paid as they come due.

Individual Chapter 11
Combined Plan & Disclosure Statement  (Version: 7/30/12)
July 30, 2012
-5-
Case: 17-52022   Doc# 163   Filed: 09/04/19   Entered: 09/04/19 14:44:27   Page 5 of 17

| Name of Counter-Party | Description of Contract/Lease | Estimated Total Cure Amount | Installment Amount | Number of Installments |
|---|---|---|---|---|
| NONE | | | | |

(b) <u>Executory Contracts/Unexpired Leases Rejected</u>. Debtor rejects the following executory contracts and/or unexpired leases and surrenders any interest in the affected property, and allows the affected creditor to obtain possession and dispose of its property, without further order of the court. Claims arising from rejection of executory contracts have been included in Class 2 (general unsecured claims).

| Name of Counter-Party | Description of Contract/Lease |
|---|---|
| NONE | |
| | |

(c) Executory contracts and unexpired leases not specifically assumed or rejected above will be deemed **rejected**.

**PART 5: DISCHARGE AND OTHER EFFECTS OF CONFIRMATION**

(a) <u>Discharge</u>. Debtor shall not receive a discharge of debts until Debtor makes all payments due under the Plan or the court grants a hardship discharge.

(b) <u>Vesting of Property</u>. On the Effective Date, all property of the estate and interests of the Debtor will vest in the reorganized Debtor pursuant to § 1141(b) of the Bankruptcy Code free and clear of all claims and interests except as provided in this Plan, subject to revesting upon conversion to Chapter 7 as provided in Part 6(f) below.

(c) <u>Plan Creates New Obligations</u>. Except as provided in Part 6(d) and (e), the obligations to creditors that Debtor undertakes in the confirmed Plan replace those obligations to creditors that existed prior to the Effective Date of the Plan. Debtor's obligations under the confirmed Plan constitute binding contractual promises that, if not satisfied through performance of the Plan, create a basis for an action for breach of contract under California law. To the extent a creditor retains a lien under the Plan, that creditor retains all rights provided by such lien under applicable non-Bankruptcy law.

## PART 6: REMEDIES IF DEBTOR DEFAULTS IN PERFORMING THE PLAN

(a)  <u>Creditor Action Restrained</u>.  The confirmed Plan is binding on every creditor whose claims are provided for in the Plan.  Therefore, even though the automatic stay terminates on the Effective Date with respect to secured claims, no creditor may take any action to enforce either the pre-confirmation obligation or the obligation due under the Plan, so long as Debtor is not in material default under the Plan, except as provided in Part 6(e) below.

(b)  <u>Obligations to Each Class Separate</u>.  Debtor's obligations under the Plan are separate with respect to each class of creditors.  Default in performance of an obligation due to members of one class shall not by itself constitute a default with respect to members of other classes.  For purposes of this Part 6, the holders of all administrative claims shall be considered to be a single class, the holders of all priority claims shall be considered to be a single class, and each non-debtor party to an assumed executory contract or lease shall be considered to be a separate class.

(c)  <u>Material Default Defined</u>.  If Debtor fails to make any payment, or to perform any other obligation required under the Plan, for more than 10 days after the time specified in the Plan for such payment or other performance, any member of a class affected by the default may serve upon Debtor and Debtor's attorney (if any) a written notice of Debtor's default.  If Debtor fails within 30 days after the date of service of the notice of default either: (i) to cure the default; (ii) to obtain from the court an extension of time to cure the default; or (iii) to obtain from the court a determination that no default occurred, then Debtor is in Material Default under the Plan to all the members of the affected class.

(d)  <u>Remedies Upon Material Default</u>.  Upon Material Default, any member of a class affected by the default: (i) may file and serve a motion to dismiss the case or to convert the case to Chapter 7; or (ii) without further order of the court has relief from stay to the extent necessary, and may pursue its lawful remedies to enforce and collect Debtor's pre-confirmation obligations.

(e)  <u>Claims not Affected by Plan</u>.  Upon confirmation of the Plan, and subject to Part 5(c), any creditor whose claims are left unimpaired under the Plan may, notwithstanding paragraphs (a), (b), (c), and (d) above, immediately exercise all of its contractual, legal, and equitable rights, except rights based on

default of the type that need not be cured under section 1124(2)(A) and (D).

(f) Effect of Conversion to Chapter 7. If the case is at any time converted to one under Chapter 7, property of the Debtor shall vest in the Chapter 7 bankruptcy estate to the same extent provided for in section 348(f) of the Bankruptcy Code upon the conversion of a case from Chapter 13 to Chapter 7.

(g) Retention of Jurisdiction. The bankruptcy court may exercise jurisdiction over proceedings concerning: (i) whether Debtor is in Material Default of any Plan obligation; (ii) whether the time for performing any Plan obligation should be extended; (iii) adversary proceedings and contested matters pending as of the Effective Date or specifically contemplated in this Plan to be filed in this court (see Part 7(f)); (iv) whether the case should be dismissed or converted to one under Chapter 7; (v) any objections to claims; (vi) compromises of controversies under Fed. R. Bankr. Pro. 9019; (vii) compensation of professionals; and (viii) other questions regarding the interpretation and enforcement of the Plan.

**PART 7: GENERAL PROVISIONS**
(a) Effective Date of Plan. The Effective Date of the Plan is the fifteenth day following the date of the entry of the order of confirmation, if no notice of appeal from that order has been filed. If a notice of appeal has been filed, Debtor may waive the finality requirement and put the Plan into effect, unless the order confirming the Plan has been stayed. If a stay of the confirmation order has been issued, the Effective Date will be the first day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

(b) Cramdown. Pursuant to section 1129(b) of the Bankruptcy Code, Debtor reserves the right to seek confirmation of the Plan despite the rejection of the Plan by one or more classes of creditors.

(c) Severability. If any provision in the Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of the Plan.

(d) Governing Law. Except to the extent a federal rule of decision or procedure applies, the laws of the State of California govern the Plan.

Individual Chapter 11
Combined Plan & Disclosure Statement  (Version: 7/30/12)
July 30, 2012
-8-
Case: 17-52022    Doc# 163    Filed: 09/04/19    Entered: 09/04/19 14:44:27    Page 8 of 17

(e) <u>Lawsuits</u>.

Debtor believes that causes of action for fraudulent transfers, voidable preferences, or other claims for relief exist against the following parties:

| Party | Creditor Y/N | Nature of Claim | Amount of Claim | Will Debtor Prosecute Action? Y/N |
|---|---|---|---|---|
| NONE | | | | |

(f) <u>Notices</u>. Any notice to the Debtor shall be in writing, and will be deemed to have been given three days after the date sent by first-class mail, postage prepaid and addressed as follows:

**Jeffery Layne Wyatt**
**c/o Henshaw Law Office**
**1871 The Alameda**
**Suite 333**
**San Jose, CA 95126**

(g) <u>Post-Confirmation United States Trustee Fees</u>. Following confirmation, Debtor shall continue to pay quarterly fees to the United States Trustee to the extent, and in the amounts, required by 28 U.S.C. § 1930(a)(6). So long as Debtor is required to make these payments, Debtor shall file with the court quarterly reports in the form specified by the United States Trustee for that purpose.

(h) <u>Deadline for § 1111(b) Election</u>. Creditors with an allowed secured claim can make a timely election under section 1111(b) no later than 14 days before the first date set for the hearing on confirmation of the Plan.

Dated: August 21, 2019

        /s/ Jeffery Layne Wyatt
        Debtor JEFFERY LAYNE WYATT


        /s/ David S. Henshaw
        David S. Henshaw, Attorney
        for Debtor JEFFERY LAYNE

**Attorney Certification**

    I, David S. Henshaw, am legal counsel for the Debtor(s) in the above-captioned case and hereby certify the following: (i) the foregoing plan is a true and correct copy of the Individual Chapter 11 Combined Plan and Disclosure Statement promulgated by the Northern District of California, San Francisco Division, on July 30, 2012 (the "Standard-Form Plan"); and (ii) except as specified below, there have been no alterations or modifications to any provision of the Standard-Form Plan.

    The following provisions of the Standard-Form Plan have been altered or otherwise modified.

Page 2, Part 1 – Secured Creditors language
Change from Debtor making payments to the entity that is making the payments. Added Stipulation language.

Page 3, Under Property to be Sold
Removed language about property to be sold and stated that properties have already been sold

Page 8, Previously (b) Disputed Claim Reserve
Removed section

    I declare that the foregoing is true and correct. Executed this 21st day of August, 2019.

                                   <u>/s/ David S. Henshaw</u>
                                   David S. Henshaw, Attorney for Debtor Debtor JEFFERY LAYNE WYATT

## Exhibit 1 - Events That Led To Bankruptcy

Debtor is a real estate broker, who focuses on land and land development transactions. Debtor's wife is a real estate agent, focusing on residential properties. In 2012, Debtor had contracted with a company, Duc Development, LLC ("Duc") to manage certain transactions for an established fee. However, after working with the company for approximately four (4) years, Duc reneged on the agreement, and failed to pay Debtor for his time and services.

Additionally, and as a cause of the Duc matter, Debtor and his wife have incurred significant income tax liabilities, which include secured, priority, and general unsecured tax claims.

Debtor maintained an interest in four separate parcels of property, prior to the commencement of his bankruptcy case. Three of those properties were related to where Debtor resided. The first was Debtor's residence, which is a loft in Saratoga. The two commercial spaces below, Debtor also owned. All three of these properties have since been sold through the bankruptcy process. However, the loans against the commercial units came due, with the lender not willing to take monthly payments from Debtor any longer. The lender pursued foreclosure process, which led to Debtor filing bankruptcy.

Debtor also has an equity interest (100% shareholder) in an entity, 3616 Associates, LLC, that owns a vacation rental property located at 2194 White Sands Drive, South Lake Tahoe, CA 96150. Debtor is the borrower on the first loan of the property. However, the LLC pays the expenses for the property. There is also a second loan on the property that is in the sole name of the LLC, not Debtor.

After the sale of the properties in Saratoga, Debtor will use his regular income to fund his reorganization plan to pay off the remaining debts, in accordance with the plan.

Debtor also has a pending lawsuit against Duc Development, which has not progressed as Debtor hoped. It appears that he will not be receiving funds from said lawsuit.

## Exhibit 2 - What Creditors Would Receive if the Case Were Converted to a Chapter 7

Real Property #1: 2194 White Sands Drive, South Lake Tahoe, CA 96150

| Fair Market Value | Liens | Cost of Sale | Resulting Income Tax | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|---|
| $2,200,000 | 1st $2,525,514.50 | $176,000 | $100,000 | $0.00 | $0.00 |
| | 2nd $178,000.00 | | | | |

Personal Property:

| Description | Liquidation Value | Secured Claim | Amt of Exemption | Net Proceeds |
|---|---|---|---|---|
| Cash | $15,000.00 | $0.00 | $0.00 | $15,000.00 |
| Automobile #1 (2008 Jaguar) | $15,000.00 | $0.00 | $3,050.00 | $11,950.00 |
| Automobile #2 (2006 GMC Yukon) | $5,000.00 | $0.00 | $0.00 | $5,000.00 |
| Automobile #3 (2002 GMC Yukon) | $1,000.00 | $0.00 | $0.00 | $1,000.00 |
| Automobile #4 (1968 Chevrolet Impala) | $2,000.00 | $0.00 | $0.00 | $2,000.00 |
| Boat (1999 Hallett Ski) | $20,000.00 | $0.00 | $0.00 | $20,000.00 |
| Household Furnishings | $13,000.00 | $0.00 | $13,000.00 | $0.00 |
| Jewelry | $10,000.00 | $0.00 | $8,000.00 | $2,000.00 |
| Business Interests | $10,050.00 | $0.00 | $0.00 | $10,050.00 |
| TOTAL | | | | $67,000.00 |

| | |
|---|---|
| Net Proceeds of Real Property and Personal Property | $67,000 |
| Recovery from Preferences / Fraudulent Conveyances [ADD] | $0.00 |
| Chapter 7 Administrative Claims [SUBTRACT] | $0.00 |
| Chapter 11 Administrative Claims [SUBTRACT] | $40,000.00 |
| Priority Claims [SUBTRACT] | $110,454.53 |
| Chapter 7 Trustee Fees [SUBTRACT] | $6,000 |
| Chapter 7 Trustee's Professionals [SUBTRACT] | $20,000.00 |
| NET FUNDS AVAILABLE FOR DISTRIBUTION TO UNSECURED CREDITORS | $0.00 |

| | |
|---|---|
| Estimated Amount of Unsecured Claims | $139,619.13 |

| | |
|---|---:|
| Percent Distribution to Unsecured Creditors Under Proposed Plan | 11% |
| Percent Distribution to Unsecured Creditors Under Liquidation Analysis | 0% |

## Exhibit 3 - Monthly Income and Expenses

| **Income** | Amount |
|---|---:|
| Gross Employment Income | $0.00 |
| Net Business Income (After Taxes) | $7,000.00 |
| Wife's Monthly Income (After Taxes) | $5,000.00 |
| Positive Cash Flow on Investment Property (Exhibit 5, Line A) | $0.00 |
| **A. Total Monthly Income** | $12,000.00 |

| **Expenses**<br>Includes Plan Payments on Secured Claims for Residence and Car | Amount |
|---|---:|
| Payroll Taxes and Related Withholdings | $0.00 |
| Retirement Contributions (401k, IRA, PSP) | $0.00 |
| Shelter Expenses (rent/mortgage, insurance, taxes, utilities) | $1,000.00 |
| Household Expenses (food) | $600.00 |
| Transportation Expenses (car payments, insurance, fuel) | $250.00 |
| Personal Expenses (e.g. recreation, clothing, laundry, medical) | $400.00 |
| Alimony / Child Support | $0.00 |
| Other Expenses | $2,000.00 |
| Negative Cash Flow on Investment Property (Exhibit 5, Line B) | $0.00 |
| **B. Total Monthly Expenses** | $4,250.00 |

| | |
|---|---:|
| **C. Disposable Income** (Line A – Line B) | $7,750.00 |

| **Plan Payments**<br>Plan Payments Not Included in Calculating Disposable Income | Amount |
|---|---:|
| Administrative Claims | $1,111.11 |
| Priority Claims | $3,958.34 |
| General Unsecured Creditors | $625.00 |
| **D. Total Plan Payments** | $5,694.45 |

| | |
|---|---|
| **E. Plan Feasibility** (Line C - Line D)<br>(Not feasible if less than zero) | $2,055.55 |

**Exhibit 4 - Effective Date Feasibility**

Can the Debtor Make the Effective Day Payments?

|  | Amount | Amount |
|---|---|---|
| A. Projected Total Cash on Hand on Effective Date |  | $30,000.00 |
| Payments on Effective Date |  |  |
| Unclassified Claims | $0.00 |  |
| Administrative Expense Claims | $1,111.11 |  |
| Priority Claims | $3,958.34 |  |
| U.S. Trustee Fees | $650.00 |  |
| B. Total Payments on Effective Date |  | $5,719.45 |
| **C. Net Cash on Effective Date** (Line A - Line B) (Not feasible if less than zero) |  | $24,280.55 |

**Exhibit 5 - Investment Property Analysis**

**Properties with Positive Monthly Cash-Flow:**

| A. Total Positive Cash Flow | $0.00 |
|---|---|

**Properties with Negative Monthly Cash-Flow:**

| B. Total Negative Cash Flow | $0.00 |
|---|---|